Brian TODD *v.* STATE of Arkansas

CR 84-128                                  678 S.W.2d 345

Supreme Court of Arkansas
Opinion delivered October 29, 1984

*Donald R. Huffman,* Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Joyce Rayburn Greene,* Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Brian Todd was convicted of several felonies in connection with the burglary of Triple T Foods, a food processing plant in Rogers, Arkansas. Todd worked there until he and three of his fellow workers were fired for smoking marijuana in November of 1981. Todd and Jason Jackson, who was fired with him, broke into the plant on November 30, 1981. Using a torch, they opened and robbed the candy, soft drink and money changing machines. The police learned of Todd's involvement when they interrogated Jackson after Todd had implicated Jackson in a separate burglary. Jackson confessed to the Triple T Foods burglary in return for a grant of immunity in that case. Charges were filed against Todd on July 1, 1983.

Todd makes two arguments on appeal: (1) the prosecuting attorney used his subpoena power after charges were filed to interrogate witnesses for trial — a use of the power not authorized by law; and (2) the trial court was wrong in allowing a witness to rebut an express or implied charge of recent fabrication by testifying about another witness' prior consistent statement. Both arguments must fail.

Essentially, the appellant's first argument is that the statutory power of a prosecuting attorney to subpoena witnesses is the same as the subpoena power of a grand jury: that is, it is limited to investigation and cannot be used once the investigation ceases and charges are filed. The power of subpoena was granted to prosecuting attorneys after the Arkansas Constitution was amended to allow prosecutors to file charges by information. See Ark. Const. Amend. XXI and Act 160 of 1937. Before that time, charges had to be filed by a grand jury. After the passage of the amendment, grand juries met less frequently and the prosecutor supplanted the grand jury to a certain degree. *Taylor* v. *State,* 220 Ark. 953, 251 S.W.2d 588 (1952). The subpoena power was granted to aid prosecutors in investigating charges and preparing for trial. There is no doubt that the subpoena power may be used after charges are filed. See *Cook* v. *State,* 274 Ark. 244, 623 S.W.2d 820 (1981). This does not mean that the subpoena power cannot be abused. For example, in *Duckett* v. *State,* 268 Ark. 687, 600 S.W.2d 18 (Ark. App. 1980), it could not be used to allow state policemen to coerce witnesses to appear for interrogation. Neither can witnesses be compelled by the use of the prosecutor's subpoena to appear in a county other than where the alleged offense occured. *State* v. *Stell,* 254 Ark. 656, 495 S.W. 2d 846 (1973). Inadmissible testimony cannot be obtained by subpoena power. *Taylor* v. *State, supra.* A witness subpoenaed has the right to have an attorney present during questioning. *Gill* v. *State,* 242 Ark. 797, 416 S.W.2d 269 (1967). A prosecuting attorney cannot use the power to stage a pretrial show of evidence with all the witnesses present. *Cook* v. *State, supra.*

All of these cases, however, recognize the right to use the prosecutor's subpoena to prepare criminal cases. Indeed, the emergency clause of Act 160 of 1937 specifically provides

that. See also J. Hall, *The Prosecutor's Subpoena Power*, 33 Ark. L. Rev. 122 (1979). We do not hesitate to hold that, in the absence of an abuse of the power, a prosecutor's subpoena may be used to prepare for trial after charges have been filed. We find no abuse in this case.

The appellant raises a due process argument concerning the subpoena power, but it was not raised below, and we do not address it. See *Taylor* v. *Patterson*, 283 Ark. 11, 670 S.W.2d 444 (1984).

The other issue concerns Unif. R. Evid. 801 (d) (1) (ii), which states:

> (d) Statements Which are Not Hearsay. A statement is not hearsay if: (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, . . . .

The trial court allowed the state to call a police officer to testify that one of the state's key witnesses, Jackie Alberding, had made prior statements consistent with her testimony at trial. He also testified to the content of her first statement. Ordinarily, evidence of prior consistent statements is not admissible to bolster credibility because it is hearsay. *Kitchen* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980). But Rule 801 (d) (1) (ii) provides an exception to that rule where there has been a charge of recent fabrication or improper influence. There was such a charge in this case, and we hold that the trial court ruled correctly.

Jackie Alberding was located by the state just before trial and was subpoenaed for interrogation. She made at least three statements. She was first questioned alone. Then Jason Jackson was brought in, and they were allowed to discuss the case. She made another statement with Todd's attorney present. All of the statements were consistent and the police officer, who was present for all the statements, was allowed to testify to that fact.

Alberding's testimony was crucial because she testified that Todd and Jackson planned the burglary at her apartment and asked to borrow some pantyhose to use in the burglary. When she later learned of the burglary, she said that she knew Todd and Jackson had done it. She said Todd came by with money he had taken, some of which was burned by the torch, and that he left a coin box from one of the machines at her house.

When Alberding was cross-examined at trial, a number of questions by the defense attorney implied that her version was the result of being questioned with Jackson. He, in fact, asked her whether she had told him they were both there to get their "story straight." Without reciting all the cross-examination, and it was extensive, it is fair to say that the trial court was correct in concluding that the defense was implying that Alberding had fabricated her statement after speaking with Jackson. This is exactly the situation contemplated by Rule 801(d)(1)(ii) since the prior consistent statement that the officer testified to was taken before Alberding was questioned with Jackson. See *Kitchen* v. *State, supra.* Therefore, we find no error.

Affirmed.